The court will proceed to the second case of the day, Knight v. Grossman. The court will proceed to the second case of the day, Knight v. Grossman. Good morning. May it please the court. My name is Emily Greb and I represent Appellant Mr. Dwayne Knight. Your Honors, this case presents an opportunity for this court to hold that the Fourteenth Amendment's right to inform consent to medical treatment does not also require that a physician act with deliberate indifference, which is a separate analysis conducted under the Eighth Amendment. In making this holding, this court would join the majority of circuits to address this question, with only one circuit, the Second, holding to the contrary. Here, without prior guidance from this court, the District Court, on summary judgment, erroneously adopted the Second Circuit standard. Had the District Court adopted the majority approach, which includes a balancing test, considering the prisoner's protected liberty interest in refusing medical treatment on one hand, and relevant state interest on the other hand, summary judgment could not have been granted against Mr. Knight on this record. The Second Circuit's test in Pabon, though, has an overarching balancing, right, that comes in at the end. I mean, just by the terms of the Pabon opinion. Your Honor, there is balancing involved in the Pabon standard. However, what Pabon does that other circuits do not is require that the physician act with deliberate indifference. The other circuits simply apply a balancing test that looks at the reasonable patient, as opposed to the relevant state interest, and does not require deliberate indifference. So the part of that that confuses me a little bit, a lot of those cases arise in the context of, like, forced medication, or forced feeding, or something like that. And that's really the polar opposite of what you have here. So how, on a fact pattern like this, how do you even undertake the balancing with respect to the state side of the equation? How do you do it? Well, Your Honor, certainly... If you're not talking about forced medication. Well, Your Honor, certainly the balancing test provides for courts to consider the facts at hand. Certainly, in this case, there could be state interest in proceeding with medical care for prisoners. We would assert that, in this case, the balancing test would not have allowed Dr. Grossman to proceed with treatment. I could come up with a number of situations, as Your Honor has, that the state interest may, for example, have an interest in proceeding with medical care absent informed consent. But I think Your Honor is correct that, in this case, the application of the balancing test, there may not be strong state interest. And Mr. Knight's right to informed consent would certainly weigh in favor of finding a due process violation. It seems like it's going to be true in pretty much every circumstance where you have an elective procedure, to me. And a patient says, oh, we never had a discussion about Plan B. I never consented to Plan B at all. And I don't know how that, in an elective procedure, how the balance doesn't always favor the plaintiff inmate. Your Honor, I think certainly that, in a situation where, as you mentioned, I think Plan A would be proceeding with the surgery as originally consented to, and Plan B would be some sort of deviation thereof, certainly the right to informed consent includes, for example, as it did here, when a patient signs an informed consent form that lists consenting to other interventions as, quote-unquote, necessary and desirable. For example, if something were to come up during the course of surgery that was necessary, certainly a doctor would have authorization to proceed with that. What a doctor doesn't have authorization to proceed with and didn't in this case is a different elective procedure. So it wouldn't necessarily foreclose all procedures occurring in the course of treatment, but things that would not be necessary are outside of informed consent, as under the 14th Amendment they should be. Is it clear from the record that Mr. Knight was not informed of the actual surgery that was performed until the follow-up appointment three months after the surgery? Is that clear? Your Honor, we believe that it is clear from the record. Mr. Knight has testified and put in evidence that suggests that Dr. Grossman did not tell him what surgery was performed immediately following treatment. He was not informed while at the Department of Corrections, and it was not until the follow-up three months later. And Dr. Grossman, when asked about that at his deposition, said he remembered talking to Mr. Knight, but he couldn't remember whether or not he had told Mr. Knight that the abrasion arthroplasty had in fact occurred. And so as the record stands, Mr. Knight is the only individual that's offered specific testimony to that point and has stated he was not told. I do have one other question I'd appreciate your answering. Was the non-weight-bearing restriction communicated to the prison doctors in the forms that were sent with Mr. Knight's file, but not communicated to Mr. Knight, or was it also not even noted in the file? So, Your Honor, taking that question and breaking it down a little bit, what was an abrasion arthroplasty, which is the surgery that was performed, requires a period of non-weight-bearing. However, what was written on the forms that went from Dr. Grossman to Dr. Manlove at the DOC was that there was to be weight-bearing as tolerated and that Mr. Knight could wear an ACL brace. So the instructions that were actually provided from Dr. Grossman to the Department of Corrections did not in fact accurately convey that for an abrasion arthroplasty, there's to be a period of non-weight-bearing. So the non-weight-bearing instruction was actually never communicated from anybody, Dr. Grossman or anybody at Waupon, to Mr. Knight or the Department of Corrections. Thank you. So I'd like to circle back and look at our support for the fact that this court should follow Kruzan. In Kruzan, the Supreme Court held that the 14th Amendment protects a constitutionally protected interest in refusing unwanted medical treatment. The Supreme Court stated that that liberty interest must be balanced against the relevant state interests. There have been six circuits that have looked at the 14th Amendment right to informed consent. Five of them have followed the Kruzan balancing test. Only one, the Second Circuit, Papone, has found otherwise. For example, the Third Circuit in White v. Napoleon found that the weight that the court is to weigh the interests of the state, such as safety and health, against a prisoner's right to send such information as is reasonably necessary to make an informed decision about accepting or rejecting a proposed treatment. And the Third Circuit does not require any finding of deliberate indifference. I think there should be any state-of-mind requirement in a due process claim. With respect to the doctor, no. The five circuits that have addressed this do not require any particular state-of-mind requirement on behalf of the doctor. And that would certainly be consistent with Kruzan. And it would also be consistent with cases that Dr. Grossman has cited, such as the county of Sacramento, which takes the 14th Amendment right to an extreme but does require there be intent in emergent circumstances. In this particular case, and in these cases, courts have found that while mere negligence isn't necessarily enough for a due process violation, something more like gross negligence may be appropriate, but that you wouldn't necessarily need deliberate indifference or intent on behalf of the physician. What evidence is there that Dr. Grossman's decision to alter the surgical procedures once he had determined that the ACL was intact was not based on his medical judgment? What evidence is there? Well, Your Honor, Dr. Grossman may have, in fact, used some judgment, but the problem with what Dr. Grossman did is that he substituted his judgment for that of Mr. Knight. Dr. Grossman, while he may have exercised judgment, was not allowed to sort of put himself in the shoes of Mr. Knight and make a decision for him. So is it really your view that in the middle of all this, they should have woken Mr. Knight and said, Mr. Knight, it's not what we thought it was. He's under a general anesthetic. It's not what we thought it was. Can we do something different? I'm not sure I understand that, your view of a doctor in the middle of an operation. Respectfully, Your Honor, yes, we do assert that, particularly with respect to the abrasion arthroplasty. Now, the record does indicate that Dr. Grossman performed three procedures. He performed a notchplasty, a chondroplasty, and an abrasion arthroplasty. We assert that the notchplasty and chondroplasty were within the informed consent that Mr. Knight had signed. Those are sort of surgeries that are part and partial to any knee surgery and would have been necessary under the ACL surgery. However, the abrasion arthroplasty was a very different procedure with its own risks and benefits. It's an optional surgery to address arthritis and has changed the course of the treatment that Mr. Knight can now seek for his arthritis. And so we do assert that in a situation where, while a physician may consider different options, if one of those options is an elective procedure that the person who is under anesthesia may not want to undergo, if given the information that a reasonable patient would want to know to make that decision, that that is the appropriate point to stop. What concerns me here is the context, the mental state requirement. Because to get, I think, at least as I interpret Judge Roedner's question a little bit, you know, you're talking about an inmate here. And when you look at the factors that Dr. Grossman considered, you know, he explains in his affidavit that, yeah, this was not an ACL. I didn't need to reconstruct the ACL, as I thought. But I was already in there, and through a procedure that would actually be less invasive than what was initially intended, and recognizing that there had already been pretty substantial delays that Mr. Knight had experienced, I exercised my judgment and tried to help him by trimming the loose cartilage, you know, in the knee there. I mean, I just don't know how that gives rise to liability in a due process setting like this. Under the substantive due process clause? Well, Your Honor, certainly, respectfully, Dr. Grossman did more than just trim the loose edges. First of all, he said that the trimming of the loose edges is part of the chondroplasty. We're not asserting that the chondroplasty was improper. That is not controversial. What we are asserting is that the abrasion arthroplasty, where Dr. Grossman took the knee down to bleeding bone in an attempt to regrow new cartilage, was the procedure that he did not have consent for. And it is a prison context, but certainly prisoners do not give up their right to due process. And we assert that Dr. Grossman, yes, while he may have undertaken some sort of deliberation in surgery, the abrasion arthroplasty was simply taking that a step too far. And certainly, even a prisoner has a right to make a reasoned decision about whether or not he or she would undergo a procedure that has its own unique risks and benefits. I appreciate your point of potentially less invasive. I understand that Dr. Grossman has argued that given that the ACL reconstruction surgery would have required opening up the two knees, whereas the abrasion arthroplasty only opened up one. But that doesn't change the fact that the abrasion arthroplasty still has its own unique risks and benefits to it that Mr. Knight was not afforded the opportunity to consider. And certainly, if this court were to adopt a different circuit's approach, in fact, five of six circuits that have looked at this question have not required deliberate indifference on behalf of the physician, the balancing act would weigh in favor of protecting Mr. Knight's due process. Should it matter to us that the plaintiff here, Mr. Knight, has not said, even to this day, in a sworn way, that he would have made a different decision? In other words, I think your point, as I read it, is he was just deprived of the choice. And therein lies the violation. But even to this day, he hasn't said, I would have made a different decision. Well, Your Honor, I would note that on summary judgment, Dr. Grossman did not raise that challenge in his brief. And given that this court is considering, as the district court did. Mr. Knight's the plaintiff, though, right? I mean, he could have very easily submitted an affidavit and in very declarative terms say, this is not hypothetical. Your Honor, when he was questioned at his deposition, he has been very clear that he thought he was only consenting to the ACL surgery. I note I'm almost up at time. May I continue? You can conclude. We'll give you extra time if you need it. Thank you. Mr. Knight has said in no uncertain terms he consented to the ACL surgery and that he did not consent to anything else. Dr. Grossman did not challenge that particular point on summary judgment. Had he challenged it, Mr. Knight may well have put in an affidavit. But given that we are here appealing a summary judgment decision, the facts are to be viewed most favorably to Mr. Knight. He's stated that he would only have consented to the ACL surgery. And so the record supports on summary judgment that finding. Ms. Grip, the only doctor he consulted in this case is Dr. Grossman, right? So Mr. Knight also has set forth expert testimony of a Dr. Hutchinson. No, no, I mean prior to the surgery. I believe that's correct. So is it Mr. Knight's position that he should have been awoken and then given the opportunity to talk to another doctor or just consult with Dr. Grossman? Mr. Knight's position is that he would have required the information as a reasonable patient would require to make a decision. There's been no contention one way or the other whether that information came from Dr. Grossman or a different physician. All right. Yeah, you had gone into rebuttal. You had asked for four minutes. I'll give you three minutes. Thank you. Mr. Frankowiak? May it please the Court. My name is Jason Frankowiak, appearing on behalf of the respondent, Dr. Grossman. Summary judgment was obviously granted to Dr. Grossman on both his Eighth Amendment deliberate indifference claim and on the Fourteenth Amendment due process informed consent claim. Dr. Grossman contends that summary judgment was properly granted and requests affirmation. With regard to the Eighth Amendment claim, it was only briefly touched upon here, but there were three bases that were asserted or allowed under the screening order. One, the alleged misdiagnosis of the ACL tear. Two, the alleged failure to inform Mr. Knight of the misdiagnosis immediately after the surgery. And three, Dr. Grossman's alleged choice to perform an abrasion chondroplasty or arthroplasty intraoperatively without regard to the risks. The first of those elements was not pursued on appeal. It has been abandoned. It was decided by the lower court that the misdiagnosis basis is not being pursued. With regard to the failure to inform aspect of the Eighth Amendment claim, that was brought up a little bit here this morning, the district court properly determined that there is no viable Eighth Amendment claim in this case. Obviously, the standard for deliberate indifference is well known. It has been well stated here that the professional acting in a professional capacity must display deliberate indifference only if the decision is such a substantial departure from accepted professional judgment as to demonstrate that the person responsible didn't actually base the decision on such a judgment at all. In this particular case, the expert produced by the plaintiff would not go that far. When asked at his deposition specifically, are you going to render any opinion in this case that Dr. Grossman violated Mr. Knight's rights by failing to properly inform him about the intraoperative findings in some way immediately after the surgery, he said, I know that's a concern, but I have no evidence at this time to support that conclusion. Mr. Knight thus has no evidence that Dr. Grossman's alleged failure to inform Mr. Knight about the intraoperative findings after the procedure is a departure from accepted practice at all, much less a substantial departure, which is the standard that has to be reached for a deliberate indifference claim. It should also be stated that there is a factual issue there or a factual basis for this claim that he is lacking. It is undisputed that there was an operative report that was produced. It was created by Dr. Grossman. It was given to his DOC providers immediately after the procedure. It's attached to one of the affidavits that was submitted on summary judgment. In that operative report, all of the procedures performed, all of the findings, everything was included in there, and there's no contention here that that was not provided to the DOC providers immediately after the surgery. Now, the DOC providers under the DOC procedures are responsible for Mr. Knight's health care, for providing that care and that follow-up care. They were privy to all of the information that Dr. Grossman had. This was not a case that Dr. Grossman was withholding anything. Moreover, Dr. Grossman was available for any questions to the DOC providers. If they had any questions, and Mr. Knight could obtain any information that he requested or that he sought from his DOC providers, who were the ones immediately in charge of his production. We can't forget the basis or the underlying situation here, that Mr. Knight was a ward of the Wisconsin Department of Corrections. Dr. Grossman did not have unfettered access to him. He didn't have all day to spend with him. He couldn't have access to him. He couldn't talk to him. He couldn't answer his questions until and unless he was produced by the DOC back to Dr. Grossman. So this is not a situation where he did not have any evidence for three months. In fact, if he had asked his DOC providers, Hey, what procedures were done? What was going on there? What actually happened here? Why weren't both of my knees opened up? Only one was. It was right there in the notes, and he was also available to the DOC providers to be able to talk about that. With regard to the final basis, that would be the question of whether Dr. Grossman performed a procedure without regard to the risks in this case, as was noticed earlier today. There were three procedures that were performed. Several of them are not even being questioned here. The only one that's being questioned is what Dr. Grossman termed as an abrasion arthroplasty. There's also been no problem or no criticisms of the fact that that was performed or the way in which it was performed. The only criticism here is whether or not Mr. Knight should have been woken up and a second informed consent discussion should have been had with him before that procedure occurred. Now, Mr. Knight contends that- Well, you know, may I interrupt you for a moment? Certainly. Dr. Grossman failed to inform Mr. Knight of his decision to perform the other surgical procedures. And in that context, couldn't a jury determine that the failure to order the white bearing, the weight bearing restriction was part of an intentional effort to avoid informing him of the decision to perform a completely different surgery rather than a medical judgment or negligence? Well, Your Honor, I think we have to consider the circumstances here. Well, that's- This was not an issue where an effort was made to not to warn him or to obtain his consent previous to the operation. This actually occurred intraoperatively when Dr. Grossman- No, no, no. I am talking about post-op care. I'm talking about the post-op care, not to let someone know for three months what had occurred or how you take care of what, you know, was a follow-up to the surgery. That's what I'm asking you about. Sure. Your Honor, actually, the operative note that was provided to Mr. Knight's DOC providers did include a paragraph on that operative note that explained the post-operative suggestions. Now, the DOC providers are the final arbiters of what gets done, but Dr. Grossman can suggest what should be done in this particular case. That was specifically put- He always puts his recommendations, his post-op care recommendations, on the actual op note that goes to the DOC providers. It was on this particular op note. He also is available, as he states on that op note, to consult with them if they have any questions. Now, there is- What was on the op note, though? Was it the weight-bearing limitation? The weight-bearing, in fact, was not an issue on the op note, and that was addressed by some of the expert testimony down below. For instance, an expert was produced by Dr. Grossman. He made it clear that the only reason why you would need a weight-bearing restriction is if you are doing this procedure on a weight-bearing joint. In this particular case, the abrasion arthroplasty was being done on a joint, but not a weight-bearing joint. So a weight-bearing restriction was not required, and that was a difference of opinion between the experts, but that was why it was not in his op note. He had his other suggestions in his op note, just not a weight-bearing restriction, and it was simply because it was not a weight-bearing joint on which the procedure in question was being done. Relative to the Eighth Amendment claim, the last one, which is essentially the same basis that we have the Fourteenth Amendment claim, Mr. Knight's brief argues that Dr. Grossman deviated from accepted standard of practice in a way that was so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition. But when we look at Dr. Hutchinson's testimony, he refused to go that far. He was asked specifically whether he holds the opinion that the procedures were, or that Dr. Grossman's decision to perform the procedures were so blatantly inappropriate as to evidence intentional mistreatment of Mr. Knight, and he responded that, I don't think I've ever said that. So what we have here essentially is an opinion from Dr. Hutchinson, the only person who's given an opinion, that there was a departure from accepted medical standards. But that supports nothing more than a negligence claim in this case. There is no negligence claim, there's no medical malpractice, there's no pendent state law malpractice claim here. It is strictly a constitutional claim. It's very clear, this court has held on numerous occasions that mere disagreement between experts is not enough to establish deliberate indifference. A prisoner's dissatisfaction with proposed course of treatment is not enough to establish deliberate indifference. And even evidence that some medical professionals, for example, like Dr. Hutchinson, would have chosen a different course of treatment or would have chosen to do something differently, that also is insufficient to make out a constitutional claim for deliberate indifference. The Supreme Court obviously recognizes... Can I ask you a question about the 14th Amendment claim? Oh, sure. What's it mean for a doctor to be deliberately indifferent to somebody's right to be informed and to refuse treatment? What's the content of that? The context? Yeah, the content. What's it mean? I mean, what's the doctor have to know? In order to... For a plaintiff to satisfy the deliberate indifference prong, you know, as you kind of propose it under Pabon. Well, Your Honor, I would contend that Dr. Grossman would take the position that actually Pabon is the correct or appropriate standard. No, I know. What's the deliberate indifference prong? What's it mean? What's the doctor have to know? That the plaintiff, in fact, has not consented to this procedure? That there's been no... Or more hypothetically, does he have the latitude to kind of guess? That if I talk to him, I'm almost certain, you know, that he would agree to allow me to go to Plan B? Well, the deliberate indifference standard would be... It would have to connote a decision that was so out of the ordinary that no reasonable person would do it. No reasonable person could justify it, could explain it. No minimally competent doctor would have done that. In this particular case, he laid out a laundry list of the concerns that he had. I see this pathology. I know I can treat it. I can't fix it because it's arthritis, but I can try to make the knee joint work better. Does the record, though, lend itself to a conclusion? Set aside the medical part of that. Like, I know I can make it better and all that. I can help this guy. But isn't the record pretty clear that he also knew this is absolutely this Plan B procedure, not something he conferred with the patient about? In other words, it's outside the consent. It's outside the procedure. That was authorized. In other words, you want to ask the question more broadly, more generally, and I think your adversary wants to ask it more narrowly. It is true that Dr. Grossman does not contend now that he had such a conversation or that he knew that they had discussed this because this particular procedure was not contemplated prior. Going into the procedure before Mr. Knight was put under, it was assumed, it was believed this was going to be an ACL procedure. No, I got that, but isn't the plaintiff's point that, well, when you got in there and you encountered the unexpected, I had a right to be talked to and advised and to make an informed choice about whether you went to Plan B. It wasn't up to you. It was up to me. I'm the holder of the due process right. Well, the question is the mental state of the doctor. What is he facing there at that point? He's there. He sees the issue. He thinks he can fix. He knows it's not something he discussed, but in that written consent form that was signed, it addressed, it said we're going to perform an ACL repair, but I also consent to the doctor using his discretion to perform any other or additional procedures that may be contemplated in the discretion of the doctor. So Dr. Grossman looking at that, he believes he has a, his mental state is such that he believes he has, yes, that consent form that he signed prior says we're doing an ACL, but he also said, according to that language, if I see something that I need to withdraw that I think could be addressed, I have the authority to do that. He's saying I can do that. He didn't strike that language. He didn't absolutely forbid me. If this is not an ACL, I don't want you to try to exercise your discretion. I just want you to close me up and send me back. Dr. Grossman is looking at that language and saying, okay, it's not an ACL procedure, but he did consent on that consent form to let me use my discretion to do something else. Presumably there's limits to that, right? So suppose, for example, you would have had an extreme scenario where he decided, look, the leg actually needs amputated. Well, in this particular case, if we look at the context, he really was in a no-win situation in that. Once he goes in there and he sees it's not an ACL tear, it would be a violation of his rights and medical malpractice to go ahead and try to do a repair on an ACL that is not done. That's what he consented to, or an ACL that's not damaged. He sees an issue, and my time's about done. What you're saying is basically, look, it's kind of close enough here. There was nothing extreme done, and that's your argument. He's looking at the alternative. What if he did the opposite? What if he did nothing? He sees the pathology. He knows he can do something about it. He closes Mr. Knight back up. He sends him back to his DOC providers, knowing from past experience that he may not see him again for months or a year. I expect that what Ms. Graves is going to say is they're just not his choices. They're not up to him. The choice isn't up to him. Well, he would be subject to the same deliberate indifference claim if he saw something he thought he could fix, closed him up, didn't address it, because the pathology is still there, and the issues and the complaints are still there. If he closes him up, he's done nothing, and he's just sending him back. So the months and years that go by before the DOC sends him back, potentially, all would be attributable by Mr. Knight to Dr. Grossman if Dr. Grossman sees a problem, thinks he can handle it, washes his hands, walks away. Mr. Knight could say in the alternative, why did you let me suffer for those months and years? Why didn't you just fix the problem? He couldn't win either way. He was going to be faced with a lawsuit, deliberate indifference lawsuit, either way. Thank you.  Your Honors, there has to be a right to informed consent under the Due Process Clause. Kruzan has recognized it. The Supreme Court has recognized it. Five out of six circuits that have addressed the issue of informed consent have found that there's no deliberate indifference requirement under the balancing test for a right to informed consent. However, under Pabon, which is how the district court analyzed this case, even if this court were to adopt Pabon, Dr. Grossman was deliberately indifferent to Mr. Knight's right to informed consent. As Mr. Ferkowiak just mentioned, Dr. Grossman did, in fact, and it's in the summary judgment record, he submitted an affidavit saying that he went through and deliberated during surgery and decided to substitute his judgment for that of Mr. Knight in performing the abrasion arthroplasty. Ms. Graff, would you say this separate procedure, which was not consented to, was in any way allied to what he had consented to? By that, I mean taking Judge Scudder's example. He certainly didn't consent to a tumor removal or an amputation. But in the context here, as was described by your opponent, maybe it's Plan B, but it's not Plan D, not as continuum. Is the B here in any way allied to the consent, or is it so foreign in your view that the consent must be had? Your Honor, it's our contention that it is, to use your word, so foreign as the consent must be had. And I would also just like to note for the record, in the context of your question and in response to Mr. Ferkowiak, that the consent form that Mr. Knight signed provided consent for, quote, what is necessary and desirable. And it does use the word necessary, which is extremely important here. And it was not some sort of overarching consent to fix whatever problem he found. And as to the point as well, this case comes up on summary judgment. The court is to consider the facts, most favorable to the non-movement. And it's clear it's up for a jury to decide, even if we're to consider Dr. Grossman's mental state and his deliberation. That's not an appropriate finding on summary judgment, given the facts. All right. I believe I'm up on time. Thank you very much. Thank you. Thank you to all counsel. The case is taken under advisement.